## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHRISTOPHER AKINSEHINWA          :

      Petitioner                   :

      v                            :          Civil Action No. WDQ-05-2366

I.C.E. and                         :
DOUGLAS C. DEVENYNS

                                  :

      Respondents

o0o

## MEMORANDUM

Pursuant to this court's order to show cause, respondents have filed an answer to the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  Paper No. 5.  Petitioner, an immigration detainee held at the Wicomico County Detention Center, alleges that his continued detention pending his removal from this country is unreasonable. Paper No. 1.  Upon review of the papers filed, this court finds a hearing in this matter unnecessary.[1]  Local Rule 105.6 (D. Md. 2004).

Respondents move to delete I.C.E. as a respondent in this case, leaving only Warden Devenyns as a respondent.  Paper No. 5 at pp. 2–3.  Warden Devenyns is the Warden at the Wicomico County Detention Center.   The proper respondent in a habeas corpus proceedings is the person who has immediate custody of the person detained, not a remote supervisory official.  *See Rumsfield v. Padilla*, 542 U.S.  426, ___, 124 S. Ct. 2711, 2717 (2004).  The motion to delete I.C.E. as a party will be granted.  Petitioner's motions to amend the petition to include as respondents Attorney General Gonzales, Field Officer Director Calvin McCormick and the

---

[1] Petitioner has filed a motion for appointment of counsel. Paper No. 9.  In light of this court's determination that an evidentiary hearing is unnecessary in this case, the motion shall be denied.

Department of Homeland Security shall be denied.  Papers No. 7 and 8.

Respondents assert that petitioner is a native and citizen of Nigeria who entered the United States as a non-immigrant visitor in 1979.  Paper No. 5 at Ex. A.  Petitioner claims to be a citizen of Ghana and that he merely came to the United States from Nigeria with a Nigerian passport.  Paper No. 1 at p. 2.   Later petitioner adjusted his immigration status to permanent resident. Paper No. 5 at Ex. A. On all documents filed by petitioner he stated he was born in Lagos, Nigeria and claimed citizenship in Nigeria.  *Id*. at Ex. B.  On one occasion, in an application for an immigration benefit, petitioner provided sworn affidavits of his parents who attested to his birth in Lagos, Nigeria.  *Id*.

Petitioner was convicted in the Circuit Court for Alexandria, Virginia for the offense of obtaining money by false pretenses on July 21, 1988.  *Id*. at Ex. A.  He was again convicted of the crime of theft over $300.00 in the Circuit Court for Prince Georges County, Maryland on January 1, 1991.  *Id*.  Based on these convictions, petitioner was served with an order to show cause on April 9, 1991, charging him as a deportable alien convicted of crimes of moral turpitude.  *Id*. at p. 2.

Pursuant to the order to show cause, deportation proceedings were held before an immigration judge and petitioner admitted the charges alleged in the order to show cause.  *Id*. at pp. 1– 3.  Petitioner's Nigerian citizenship was among the allegations raised in the order to show cause which were admitted by petitioner.  On October 4, 1991 the immigration judge issued an order for petitioner's removal to Nigeria.  Petitioner sought a waiver of deportability and adjustment of his status, however, his applications for relief were not timely filed and were deemed abandoned.  *Id*.  No appeal was noted by petitioner, however, he filed a motion to reopen

the deportation proceedings on August 19, 1992 which was ultimately denied by the immigration

judge on September 2, 1992.  Petitioner appealed the denial of his motion to re-open with the

Bureau of Immigration Appeals (BIA).  The appeal was dismissed on April 2, 1993.

Upon release from custody of the Maryland Division of Correction,[2] petitioner was taken

into Immigration and Customs Enforcement (ICE) custody on February 28, 2005.   He was

initially scheduled to be deported on April 14, 2005, however, travel documents were not issued

by the Nigerian Consulate because during an interview by an officer of the consulate, petitioner

claimed he was a citizen of Ghana, not Nigeria.  Paper No. 5 at Ex. C.   Petitioner claimed he

was not a citizen of Nigeria on four occasions between April 12 and May 17, 2005, during visits

by his assigned ICE Deportation Officer.  *Id*.   On June 30, 2005, petitioner claimed that he was

neither a citizen of Nigeria or of Ghana and further claimed he did not know where he was born

because his mother died when he was young and his father's whereabouts are unknown.  *Id*.  In

his petition for writ of habeas corpus, petitioner claims to be a citizen of Ghana but has no

documentary evidence to establish that citizenship.  Paper No. 1 at p. 2.  He also admits that he

entered this country from Nigeria with a Nigerian passport, but does not explain how he came to

possess a Nigerian passport as a citizen of Gana.  *Id*.

Petitioner has been advised, pursuant to a Warning for Failure to Depart, that any alien

who refuses to make timely, good faith efforts for application of travel documents required for

his or her removal, or otherwise takes action to hamper the removal process, may be criminally

prosecuted.  Paper No. 5 at Ex. C.  Petitioner was instructed, in writing, to provide

---

[2] Petitioner was serving a ten year sentence for a March 2000 conviction of robbery with a deadly weapon, imposed in the Circuit Court for Baltimore City.  Paper No. 5 at Ex. C.

documentation concerning his citizenship and to otherwise comply with efforts to obtain travel documents. *Id*. Petitioner was provided with 30 days to begin applying for travel documents. *Id*. On August 11, 2005, petitioner claimed he was trying to get Nigerian officials to send his documentation to the Embassy of Ghana so that he could be interviewed by officials from Ghana. *Id*. Petitioner was told by his deportation officer that he could call the Embassy himself and that another interview with the Nigerian Consulate. was being scheduled. *Id*.

Petitioner was again scheduled for removal on August 31, 2005.  In order to obtain travel documents, petitioner was again interviewed by the Nigerian Consulate on August 19, 2005. *Id*. at Ex. E.  Petitioner claimed during that interview that he was a citizen of Ghana, but admitted that he had no Ghanaian birth certificate. *Id*. Petitioner also stated that would refuse any further efforts to interviewed by the Nigerian Consulate. *Id*.  Based on petitioner's statements, travel documents were not issued and the scheduled removal was cancelled. *Id*.

Petitioner was again served with a Notice of Failure to Comply on September 21, 2005, which explains that petitioner's removal period has been extended and that he will remain in detention because he has failed to make good faith efforts to obtain travel documents. *Id*. at Ex. C.  Petitioner has again been advised that he may be criminally prosecuted for any further refusal to cooperate with efforts to obtain travel documents.  As of September 26, 2005, the documents pertaining to petitioner's Nigerian birth and citizenship are being reviewed by the Nigerian Consulate.

Petitioner challenges his continued confinement pending removal.  The decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001) governs the issue of whether an alien's detention pending removal is constitutional.  In *Zadvydas*, the Supreme Court held that post-removal order

4

detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to bring

about the alien's removal from the United States and does not permit indefinite detention.  In

sum, the Supreme Court found that after an order of deportation became final, an alien may be

held for a six month period.  After this period:

> "[o]nce the alien provides good reason to believe that there is no
> significant likelihood of removal in the reasonably foreseeable
> future, the Government must respond with evidence sufficient to
> rebut that showing. And for detention to remain reasonable, as the
> period of prior post-removal confinement grows, what counts as
> the 'reasonably foreseeable future' conversely would have to
> shrink.  This 6-month presumption, of course, does not mean that
> every alien not removed must be released after six months. To the
> contrary, an alien may be held in confinement until it has been
> determined that there is no significant likelihood of removal in the
> reasonably foreseeable future."

*Zadvydas*, 533 U.S. at 700.   The purpose of detaining a deportable alien is to insure his presence

at the moment of removal. *Id*. at 697–99.   In cases where it is unlikely that removal will occur,

detention of the alien no longer serves this purpose.  *See Clark v. Martinez*, __ U.S. __, __, 125

S. Ct. 716, 726 (2005) ( where repatriation negotiations for removal of inadmissible aliens to

Cuba had ceased, removal was not reasonably foreseeable).  Refusal to cooperate with officials

can not be the basis for finding that removal is not likely to occur in the foreseeable future.  *See*

*e.g. Pelich v. INS*, 329 F. 3d 1057, 1060 (9th Cir. 2003) (detainee can not argue that removal is

unlikely when his decision to cooperate is the controlling factor).

       In spite of his refusal to cooperate, Petitioner seeks the protections established by the

Supreme Court in *Zadvydas*. That protection, however, is unavailable to persons such as

Petitioner who have caused the delay in their removal from this country and, concomitantly,

lengthened the time of their detention.  Under *Zadvydas* detention pending removal from this

country is presumptively reasonable for six months.  The burden of proving that removal is not likely to occur in the reasonably foreseeable future is petitioner's.  Upon a showing that removal is not likely to occur, respondent must produce evidence to rebut that showing.  *Zadvydas*, 533 U.S. at 701 ("once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").  Petitioner cannot establish that his removal is not likely to occur because his refusal to cooperate with authorities makes it impossible to discern whether or not his repatriation to his native country is feasible.  In short, *Zadvydas* protects aliens detained pending removal whom, through no fault of their own, are unlikely to be removed in the foreseeable future.  Petitioner is not an individual entitled to such protection.

Accordingly, by separate order which follows, the petition for writ of habeas corpus shall be dismissed.


<u>October 13, 2005</u>                         <u>                /s/                </u>
Date                                             William D. Quarles, Jr.
                                                 United States District Judge

6